Good morning, Mr. McAuliffe, Mr. McAuliffe, Mr. McAuliffe, Mr. McAuliffe, Mr. McAuliffe, you're reserved two minutes for rebuttal, and you can begin whenever you're ready. Thank you, good morning to all of you, and thank you for hearing our appeal this morning. When the petition against Valuex Research was filed, the company was a dead entity. It had no assets, it had no business, it had no contracts, and was intending to dissolve. In fact, Ms. Johanson, the principal, had sent a letter of dissolution to the petitioning creditors on November 29th, 2022, saying that, and she testified at the trial that all of the investors wanted their money back, and there was no point in keeping the company open. The promissory notes that the petitioning creditors were seeking to recover on were defaulted, and they matured. They had been extended a number of times. After Mr. Ross found out that Valuex FinTech was operating a business similar to the one Valuex Research was running, out of the same location, he sent Ms. Johanson a demand for an accounting, and she refused. And it came to the point where there was no way to recover on their notes. There was no viable way to recover on a state court collection action. Valuex has argued, and the bankruptcy judge and district court judge both found that there were normal debt collection practices, but you had a dead company with no assets, no ability to recover, and there are cases which say that, out of this court, that it's okay to threaten as leverage an involuntary petition. To threaten as leverage a higher percentage than what had been agreed to? Well, this is where I think... Is there any case that countenances that? I don't know of a case that talks about percentages that way, but the bankruptcy court and the district... Not just percentages, but more than they would have been entitled to if they had gone through the procedure. It's not necessarily... In this case, it was asking for 12% interest. Well, that's the question that I was about to address. The bankruptcy court found that they were asking for more than they were entitled to, and the district court said that we're trying to prefer themselves over other creditors, but there's nothing in the record to establish any of that. The petitioning creditors had no knowledge that there were 31 other creditors in suite, and there's nothing that prevents a creditor from trying to prefer their position outside of bankruptcy. In fact, there's nothing that requires a creditor to take into consideration the interests of other creditors outside of bankruptcy, and the rulings that the bankruptcy court and the district court made with respect to entitled to more and preferring themselves essentially are asking this court to say that a creditor who is owed money from a company with no assets, where the debt is matured and in default, nevertheless has to take into account the interests of all other creditors before you find a voluntary petition. Sorry, I was just gonna say, aside from considering other creditors, it doesn't go to the explanation about charging this higher, you know, this 12% rate. That doesn't... The notion that that is, you know, that kind of threatening, if you want to call it that, is reasonable. Well, Your Honor, any creditor faced with a defaulted note has any kind of opportunity to ask to restructure the note. They had a commitment now. They had a company that, by admission, had no assets, no business, and couldn't pay the notes. So they said, okay, we want a new note with higher interest rate, which is perfectly appropriate. We want it guaranteed by Mr. and Mrs. Johanson, the principals, and we would like it to be guaranteed by ValueX Fintech, which was a solvent operating entity. Right, I'm not questioning, I mean, certainly parties can renegotiate, and when someone's in default, they're in a different, a weakened position, but in terms of how this relates to the motivation or the properness of the involuntary bankruptcy proceeding, you were sort of critiquing that the lower courts for considering that as a factor to support that your client was looking, was not looking for the best interest, or this is a typical bankrupt, this is a typical debt collection practice, and that the bankruptcy was not, you know, there was nothing improper about it. That's, I guess, the part I was questioning. Well, the bankruptcy court didn't consider the interest of any creditors. Remember, this was a involuntary petition. The ValueX, the alleged debtor, made a motion to dismiss under section 303 as a bad faith filing, and that implicates bankruptcy rule 1018A1, which makes all of the discovery rules of part 7 of the bankruptcy code applicable, and none of that happened here. Okay, there was a pretty elaborate hearing that took place, and you're focusing on one aspect of the court's decision, quickly multiple reasons why it concluded that this was not an appropriate use of the involuntary petition, and that it was for litigation tactic. There were the emails that had, you know, you don't have to debate whether it's threatening or not threatening, talks about treaties with the same disrespect, notifying authorities, incredibly unexpected outcomes. The bankruptcy court noted that Mr. Ross placed value, not just ValueX research into involuntary bankruptcy, but all these other entities. The bankruptcy court noted that Ms. Blick was included as a creditor, even though she's not a creditor, and the fact that the conditions that were being sought were more than could otherwise be obtained. So you're focusing on one part, but it was after a hearing where there were multiple reasons that led the court to its conclusion that we would have to find clearly erroneous. So how do we do that? Well, I think there are a lot of findings that the bankruptcy court made that really were not supported, for example, and there were errors made. Well, the emails were undisputed, the emails were sent, right? The emails were sent. All right, it's undisputed that Ms. Blick was not a creditor, right? Yes, but that was explained at the preliminary conference. She was put there in error, and she was removed, and nobody ever sought to enforce any note against her because she doesn't have a note. Why were these other entities placed in involuntary bankruptcy beyond ValueX research? Why what? These other entities, ValueX FinTech, ValueX Inc., why were they all placed, you know, part of the involuntary petition? Oh, because there's evidence in the record from Mr. Ross's testimony and many documents which are delineated in the footnote 16 of our brief that indicated that ValueX research had developed the VX1000 index and owned all the intellectual property. And when Mr. Ross saw the interview on FinTech television with Ms. Jo Anson where she was talking about all the business that ValueX FinTech was doing, using the same index, doing the same kind of services, he had reason to believe, a reasonable belief, that they were either alter egos or that ValueX FinTech had somehow been the recipient of a fraudulent transfer of all of ValueX research's assets. And in fact, that was one of the primary motivations, Your Honor. They wanted a trustee to investigate the potential transfer of assets. Creditors cannot bring preference actions. Only a bankruptcy trustee can do that. And he named- The district court, after it hears the testimony, whine at that, whatever you're articulating, it was not really the motivation. The motivation here was to go forward on what was improper motive as a litigation tactic to extract most favorable benefit. Isn't that what a bankruptcy judge, district judges, don't they do that all the time at hearings? They hear the testimony, they're like, you know what, I know you're saying that was your motivation and there was an error to put Ms. Blick in, but I don't believe you. Isn't that essentially what courts do all the time? No, I understand what the district court and the bankruptcy court found, but let's talk, for example, about a litigation tactic. The cases say that in order for it to be used as a litigation tactic, there has to be litigation. That's what happened in Murray, that's what happened in Anmuth Holdings, that's what happened in any of the cases that have been cited regarding a litigation tactic. There was no litigation, there was no lawsuit. In fact, they couldn't sue because there was nothing to recover. This was an entity that by its own admission was dissolving, had no assets, had no business. Can I ask, before you sit down, just as I was preparing it occurs to me, you challenge both the dismissal and the order granting leave to seek fees and damages. That's an ongoing matter before the bankruptcy court, and so it does make me want to ask whether we clearly have appellate jurisdiction. Well, one of the issues that we identified on appeal, Your Honor, was whether or not it was appropriate for the bankruptcy judge to retain jurisdiction to do that. You are correct. She's already ordered a partial award of attorney fees. ValueX Research has five. You're going to appeal that when it's final, right? When it's final, yes. Why do we have appellate jurisdiction now with respect to the leave to file order? That's not what I'm suggesting. The issue is retention of jurisdiction, and the reason, Judge Nathan, is if you look at section 303 I2, it says that if the court dismisses a petition under this section, then the alleged editor can seek attorney's fees and damages for bad faith. But the petition was not dismissed under section 303, it was dismissed under section 07. I just want to go back to Judge Nathan's question. You're addressing the merits there, but there's now been a finding of a certain amount of fees, correct? Is that what you just said? There was an order, a partial order, entered already by the bankruptcy judge for fees. So what needs to be done then? Assuming the bankruptcy judge has jurisdiction to do this, I know you disagree, you're going to appeal the fee order itself, right? Well, when the matter is done, and she considers the supplemental request for fees, because it's an ongoing matter. So there's a supplemental request? Yeah, they made a supplemental request. They filed four supplements seeking an additional amount of fees each time. So why shouldn't the jurisdiction, just to go back to Judge Nathan's question, why shouldn't jurisdiction, why once there's been a decision on those supplemental requests for fees, and then it would come up together where the court would be considering whether or not there was jurisdiction and whether or not the fee award itself was correct? Well, your honor, we raised that issue to flag it because we think it's an important issue. But I agree with you, it's not a final order, it's interlocutory. And if this court dismisses, or rather reverses, the district court and bankruptcy court, then the statutory basis for fees and damages goes away altogether. If the court affirms, and we go back to the bankruptcy court, and we go through the exercise of having a damages trial and additional hearings on attorney's fees, once that's final, then yes, we will appeal, because we think that section 303 I-2 does not allow it, where an involuntary petition is dismissed under section 707A. So it sounds like you're close to agreeing that we might not have appellate jurisdiction with respect to the order allowing the filing of the request for fees. And then I get, I mean, you're sort of making an interlocutory appeal argument because it's a jurisdiction-based argument, I'm not sure about that. But then I guess, does that potentially impact our appellate jurisdiction to consider your appeal of the dismissal order? Well, yeah, I think the appeal of the dismissal order, the dismissal order was final. And it went up on appeal to the district court, and that was a final order, and that's why we're here. The damages issue, we've already briefed for Judge Manning, and we've argued why we don't believe damages are appropriate or attorney's fees are appropriate. She obviously disagrees. That would be similar cases where in section 1983, there's a final judgment, but there might be attorney's fees pending where we have said it's still final as to the judgment with respect to the liability. The fact that there's an attorney's fees issue out there would not preclude us from considering the merits of the underlying appeal, correct? Yeah, I'm not arguing that. Yeah, no, I know. That was a softball, that's what we call a softball. Yeah, there's other context where this comes up is my suggestion. Yes, I understand. All right, all right, thank you. Okay. Good morning, Your Honors. May it please the court, I'm John Carberry with Cummings and Lockwood, representing the Putative Debtor Value X Research LLC. I think Your Honors hit the nail on the head. There was a detailed evidentiary trial below, and the court heard testimony from Mr. Ross, self-represented, and the other petitioning creditors were represented by counsel. The court made detailed findings of fact that basically you would have to find that there was an abuse of discretion or plain error in the conclusions you came to. And I'd like to address a couple of the points that Attorney Magaluf made in his argument. One in particular is that there was no reason or the petitioning creditors couldn't go to state court to try and recover. Well, they certainly could. The only reason he cited for why they went to the bankruptcy court, which as the court below found was a pretext, was that they needed a trustee to go out and try and recover assets that may or may not have been transferred. And the testimony at the trial court was that there were no such assets transferred, that in fact- So we'd have to conclude that that finding was somehow clear error in order to get to the conclusion that they couldn't go to state court. Yes, Your Honor. In state court, any litigant has the right to bring an action under the uniform, I think it's called the Voidable Transfer Act now. For a long time, it was the Uniform Fraudulent Transfer Act. And in Connecticut, you have both a state statute and the uniform, a common law claim, and you've got the uniform law. So you can go to court and you can do the exact same thing that they're saying, oh, we had to go to bankruptcy court to get a trustee to do. The trustee can use the powers under Section 548 of the Bankruptcy Code to recover fraudulent transfers or state court law, which was always available to them. So that's really just a backfilling pretext for why they went to the bankruptcy court. Could I ask you to address appellate jurisdiction, at least with respect? I mean, they are challenging the availability of fees and damages here on the textual provision. Do we have appellate jurisdiction to consider that? Just on the court's retention of jurisdiction to consider those things? I think not, Your Honor. I mean, we did address the merits of that, and I'm prepared to address that if you would like. But I think that what should be done would be if the court affirms, the district court, and this case goes back, we will have a hearing in damages. We will have other hearings on fees and costs. And I would note, too, though, that in the Rosenberg case, there were frequent applications. That case went on for many years. And there were frequent applications for fees and costs. And in each of those, it was final. There were appeals taken from those individually, because in the bankruptcy case. To the district court and circuit, or just to the district court? I believe it was just to the district court. But I would note that, as Your Honors know, in bankruptcy, finality is somewhat different from the run-of-the-mill proceedings, or I shouldn't say run-of-the-mill, but other proceedings, because in bankruptcy, there were frequently issues that are distinct and discreet and resolved finally. Can I just ask you something that's just occurred to me in talking about this, thinking of this damages issue separately? One of the things that was briefed was this idea of whether or not bad faith is an independent basis for the dismissal under 303. If we were to conclude that it is not, to the extent that the bankruptcy court is awarding damages under 301, I guess, and that's, in a way, that's sort of dependent on, isn't there a connection there that is potentially problematic? Because if part of the justification for awarding damages under 301 is this belief that, sure, it's fine, because 303, bad faith is an independent basis. If we were to say, actually, no, let's say we said that 303, bad faith is not an independent basis for dismissal, that would impact, presumably, the question of whether or not there's an entitlement to damages under 301, wouldn't it? I think not, Your Honor, because in this case, as you know, the bankruptcy court did not make a finding of bad faith. It made a finding that there was a lack of good faith, and it cited numerous reasons for cause under 707. The district court then went so far as to say that, in Judge Hall's opinion, the record below would have supported a dismissal under 303. And so, you've got a basis to, the dismissal does not have to fall under bad faith, but the damages can be awarded. There's a separate section that allows, 303 I-2, I believe it is, that allows damages, including punitive damages, to be awarded on a finding of bad faith. So, there doesn't have to be a finding of bad faith to get the dismissal. Right, but I mean, I guess the question of, if the dismissal, there's not a finding of bad faith, and it was not dismissed under 303. Instead, it's dismissed for cause under 707. The question of whether or not 301 allows for damages for a 707 dismissal, isn't that, I mean, isn't that still causing an issue? I think, I'd be happy to address that. I think we're getting into a little bit of the merits. But under 303, 303 sub 1, I'm sorry, 303 talks about dismissing a petition under this section, under 303. And there's been an argument raised that we should say that that means dismiss a petition filed under this section, which is incorrect. You can only, 303 simply, a petition can only be filed under Chapter 7 or Chapter 11. 303 gives you the mechanism and the requirements to file an involuntary petition. So, it doesn't say dismiss a case under 303. It says dismiss a petition. So, you don't get there. And the case is under 305, which are cited to say that damages should not be available under 303, if they're under 707, rather, are different because that section says that it allows the court in its discretion to dismiss or abstain in a case filed under this title, which is Title 11, which is the entire bankruptcy code. So, 305 also, the only thing the court has to find, aside from some issues that would be involved in Chapter 15 cases, is that it is in the best interest of creditors and the debtor would be better served if the case was dismissed or if the court abstained, as opposed to under 303, where you're going to have to find cause or bad faith, and then you get to the damages. And then you can get into the bad faith can be applied to award damages, including punitive damages. So, I think, Your Honor, the lack of a finding of bad faith under 707 does not preclude a finding of bad faith that would allow the damages, including punitive damages, to be awarded. There have been a number of issues raised. Several of them that are in Section 1 of the appellant's brief were not raised below at the bankruptcy court, the district court, or the pre-argument statement. And there's no manifest injustice. If you look through those, there was a claim that, oh, the petitioning creditors never got any discovery. Nobody stopped them. There was no order that said that they couldn't. There were several months between the time the first preliminary conference was held and the evidentiary trial. No discovery was served. No depositions were sought. They can't be heard now to complain that they didn't get something they never asked for. And there was no order. There was nothing in the court's scheduling order that precluded them. There's been an argument that there have been a number of arguments under some of the sections of the bankruptcy rules. It's clear a motion to dismiss is a proper response to an involuntary petition under 1011. No answer is necessary until after the motion to dismiss is denied. That's also in 1011. No corporate ownership statement is required. Rule 7,007.1 is not applicable under Rule 1018. In the end, the court found and had ample evidence before it that this was an improper use of the bankruptcy system. They never made any attempt to collect their debt. They knew, in fact. I mean, there was a statement made that they didn't know about any other creditors. The record is clear that Mr. Ross knew of another creditor, Mr. Fisher, who he was in contact with and had simply decided that it was better for him to go to bankruptcy court because he wanted to obtain, as he put it, incredibly unexpected outcomes. And, you know, we played the tape of that in the court. And, you know, Judge Manning was able to not only hear the words but the intonation. And you couple that with the emails threatening a Ponzi scheme, going to courts and government agencies. And it's clear that this court had ample evidence to reach the conclusions it did and dismiss the case. All right. Thank you, Mr. Carberry. Thank you, Your Honor. Mr. Mangliff, you have two minutes in rebuttal. Thank you. A couple of points. You asked, or you pointed out, Judge Bianco, that there was a large evidentiary hearing. There was. But it was not conducted properly. The motion to dismiss was brought. The bankruptcy rules were implicated, including discovery rules, Rule 26, which requires initial disclosures, which ValueX admitted. And Rule 16, scheduling order, which provides for discovery. None of that happened. In fact, at the pre-trial conference- Did you raise any objections? Did you raise any objections along those lines? Your Honor, I didn't represent them- In the bankruptcy- I didn't represent them at the trial. Mr. Ross did not because he didn't know. And I don't believe that the attorney that was representing the other petitioning creditors did. This is why we raised the manifest injustice. But you go back to the May 2023 preliminary conference, and Judge Manning said there were different rules for involuntary petitions than there are for adversarial proceedings. And there are not. Rule 1018 makes very clear that the discovery rules apply to contested involuntary petitions. And they were not followed. Yes, there was a large evidentiary hearing. But the petitioning creditors conducted that evidentiary hearing without the benefit of any discovery, any initial disclosures, nothing. Because the bankruptcy judge said, you don't get it. There's no discovery. We have different rules. And this is why we argued that there's manifest injustice because the petitioning creditors did not have the benefit of what the rules clearly provide and what ValueX admitted that the rules clearly provide. If the hearing was to try to establish what Mr. Ross' motivation was, what discovery could ValueX provide on what his motivation was for bringing an involuntary petition? Well, I think, Judge, that they could have done discovery on many of the other issues. For example, was there an improper purpose? Was there a litigation tactic? Could they have collected a judgment? I mean, there was talk about, oh, yeah, they could have gone to state court. Mr. Ross knew Mr. Fisher was a creditor. What the record shows is that Monroe Capital was a plaintiff that obtained a judgment. Monroe Capital was owned by Mr. Fisher. Mr. Ross didn't know that. And the record shows that Mr. Ross had not spoken to Mr. Fisher for 30 years. So when the bankruptcy judge said, oh, well, Ross knew that Fisher was a creditor. He sued. So Ross could have sued. What does that mean? Every creditor knows that they could sue. All right. We understand the issues. Thank you both for coming in today. We're going to reserve the session. Have a good day. Thank you very much.